PUBLIC SERVICE MUTUAL INSURANCE COMPANY, Respondent, v
FIREMAN'S FUND AMERICAN INSURANCE COMPANIES, Defen-
dant, and INSURANCE COMPANY OF NORTH AMERICA, Ap-
pellant.

First Department, December 18, 1979

### APPEARANCES OF COUNSEL

*Joseph D. Ahearn* of counsel *(Neal M. Glazer* and *Michael Majewski* with him on the briefs; *Corcoran, Amabile & Cowin,* attorneys), for appellant.

*Nathan Cyperstein* of counsel *(Alvin P. Bluthman* with him on the brief; *Gantman, Cyperstein & Peckman,* attorneys), for respondent.

### OPINION OF THE COURT

MURPHY, P. J.

Plaintiff Public Service Mutual Insurance Company (Public) brought this action for a judgment declaring that defendant Fireman's Fund American Insurance Companies (Fireman) and Insurance Company of North America (INA) are liable on their policies for a proportionate share of the loss resulting from a collision occurring on June 20, 1975. After suit was brought, Fireman settled with Public upon payment of $12,-500. Public's claim against INA was submitted to the trial court on an agreed statement of facts.

Although the case was not submitted specifically under CPLR 3222, the principles governing that section should be given controlling force in this dispute. Hence, this controversy should not be determined on the patently incomplete or truncated record. *(Matter of Scharf v Kerr,* 48 AD2d 927.) If a submission is silent on a critical point in dispute, a trial court should refuse to decide the case on the facts as given. (CPLR 3222, subd [b], par 5; *Rushing v Commercial Cas. Ins. Co.,* 251 NY 302, 305.) With these principles in view, the record should be examined to determine whether it is complete.

Essentially, INA maintains that its policy (No. XBC-46610) is excess coverage to that provided by Fireman in its policy (No. LC 2416676). Under a section captioned "Retained Limit

—INA's Limit of Liability", INA's policy (No. XBC-46610) provides:

"Regardless of the number of (1) Insured under this policy, (2) persons or organizations who sustain injury or damage, or (3) claims made or suits brought because of personal injury, property damage or advertising injury, INA's liability is limited as follows:

"With respect to personal injury, property damage or advertising injury, or any combination thereof, INA's liability shall be only for the ultimate net loss in excess of the Insured's retained limit defined as the greater of

"(a) an amount equal to the limits of liability indicated beside the underlying insurance listed in Schedule A hereof, plus the applicable limits of any other underlying insurance collectible by the Insured, or

"(b) the amount specified in Item 3 of the limits of liability section of the declarations because of personal injury, property damage or advertising injury not within the terms of the coverage of the underlying insurance listed in Schedule A: and then for an amount not exceeding the amount specified in Item 1 of the Limits of Liability section of the declarations arising out of any one occurrence."

To the extent here relevant, Schedule A contains a general liability policy from "Fire Fund". The last six digits of the policy number in an appendix, that is quite difficult to read, would appear to be "572821". Schedule A also contains an automobile liability policy from "Cosmp. Mut." with a policy number of "37-050141-32".

Insurance is a matter of contract, and the parties to it can specify what property, value or interest it shall in any case cover. It may cover the whole property or any specified interest or value in it. It may indemnify against loss generally or loss above a certain sum or percentage. Thus, parties may contract that a particular policy will not attach until specific insurance on the property has been exhausted. *(Fairchild v Liverpool & London Fire & Life Ins. Co.,* 51 NY 65, 69.)

In this instance, INA contracted that it would only become liable when the underlying insurance found in Schedule A was exhausted. Therefore, the terms of Public's policy (No. 05-10672) with Salem Truck Leasing, Inc. (Salem) are not relevant to the issue of whether the underlying insurance in Schedule A has been exhausted. It should be emphasized that

Public was only required to pay under its policy after the underlying insurance listed in that policy had been exhausted. More specifically, Public's coverage was not activated until State-Wide Insurance Company, covering Salem, had paid the first $100,000 of the $350,000 settlement.

The more narrow issue thus presented is whether the underlying insurance in Schedule A has been exhausted so as to activate INA's excess coverage. First of all, INA maintains in its brief that Cosmopolitan should have been joined as a necessary party at the trial court level. INA further alleges that Cosmopolitan's automobile liability policy should be exhausted before it is required to pay under its policy. In its brief, Public states that Cosmopolitan's coverage expired before the date of the coverage.

The agreed statement of facts does not even mention the Cosmopolitan policy. Consequently, this court has no way of knowing whether that policy was in effect on the date of the occurrence. If it was in effect, then what policy should be exhausted before INA is obliged to contribute to the loss. If Cosmopolitan's policy previously expired, then the parties should so state and the Cosmopolitan policy may be properly disregarded. While I do not believe that Cosmopolitan must necessarily be made a party to this proceeding to resolve the dispute between Public and INA, this court should be presented with a precise statement as to the status of the Cosmopolitan policy.

Secondly, INA asserts on page four of its brief: "The complaint further alleges that INA's excess policy number was XBC-46610. Said policy appears in the record at pp. 92-111. Upon examination of INA's policy, in particular the schedule of underlying insurance (99), it is discovered that a) Fireman's Fund policy, No. LC 2416676, is not listed there; b) the carrier listed as providing underlying automobile liability is Cosmopolitan Mutual (99), and c) Fireman's Fund is listed as the underlying general liability insurer providing a single limit combined coverage of $1,000,000.00 as opposed to the $200,000 limit alleged by plaintiff". INA does not state why Fireman's policy (No. LC 2416676) is not listed in Schedule A or the significance of that omission. Clearly, INA's policy could not be considered excess to Fireman's policy No. LC 2416676 unless the latter policy was listed in Schedule A. In its brief, Public does not even comment upon the fact that Schedule A lists a general liability policy (No. 572821) rather

than the policy (No. LC 2416676) mentioned in the submission. Again, the agreed statement does not comment upon the status of policy No. 572821 and its relationship, if any, to the instant dispute. The agreed statement does state that Fireman paid $12,500 to Public. However, even though an inference might be drawn that the settlement figure was paid under policy No. LC 2416676, the agreed statement does not specifically state whether payment was made by Fireman under policy No. LC 2416676 or policy No. 572821.

Before this controversy is resolved, the parties should inform the court as to the status and coverage of Fireman's Fund policy No. 572821. Moreover, they should state its relationship, if any, to policy No. LC 2416676. If policy No. 572821 covers the subject occurrence, then its policy limits should be exhausted before contribution is sought from INA. If neither policy No. LC 2416676 nor policy No. 572821 covers this loss, then there may be merit to Public's contention that Public, Fireman and INA are excess insurers on the same level and must contribute accordingly. *(Federal Ins. Co. v Atlantic Nat. Ins. Co.,* 25 NY2d 71.) Likewise, a clarification of facts is needed to determine whether INA is a "secondary excess insurer".

Lastly, the parties submitted a copy of Fireman's policy No. LC 2416676 that raises many unanswered questions as to the efficacy of certain portions of that policy. For example, crosses have been drawn through pages A76 (schedule of owned vehicles) and A77 (declaration page). Crosses or similar marks of deletion are also found on pages A79 through A85. The agreed statement does not comment upon the significance of these deletions or how they affect the remainder of the policy. This matter should also be clarified before a final determination is reached.

Since the agreed statement of facts and the accompanying exhibits were insufficient to resolve this controversy, the judgment cannot be permitted to stand. On remand, the parties may stipulate to a more definite statement or they can permit this action to take its normal course. Accordingly, the judgment of the Supreme Court, New York County (HELMAN, J.), entered March 12, 1979, granting Public an award of $138,350.30 against INA, should be reversed, on the law, without costs or disbursements, and the case should be remanded for further proceedings not inconsistent herewith.

SILVERMAN, J. (concurring). I agree that, as pointed out in

the Presiding Justice's opinion, there are so many inconsistencies between stipulated facts and documents, and so many ambiguities, that the interest of justice requires a new trial. At that new trial, the true facts can be presented, including particularly the relationship, if any, among the two Fireman's Fund policies and the Cosmopolitan Mutual policy. On the other hand, I think it is premature for us to suggest the legal consequences of any particular state of facts. Indeed, I do not agree with a number of the Presiding Justice's legal conclusions on the hypothetical states of facts. But it will be time enough to decide the legal consequences when we know the facts. There are too many factual variables for us to attempt to do so now. Nor do I agree that the rules applicable to a submission of a controversy on an agreed statement of facts under CPLR 3222 necessarily apply to an ordinary plenary action in the course of which the parties make stipulations of fact at the trial, even if those stipulations purport to cover all the facts.

KUPFERMAN, BIRNS and FEIN, JJ., concur with MURPHY, P. J.; SILVERMAN, J., concurs in an opinion.

Judgment, Supreme Court, New York County, entered on March 12, 1979, reversed, on the law, without costs and without disbursements, and the case remanded for further proceedings not inconsistent with the opinion of this court filed herein.